**UNITED STATES of America ex rel. Robert Lewis KROGNESS, Neil H. Hart and Edgar Russell, Relators,**

**v.**

**Clarence T. GLADDEN, Warden of the Oregon State Penitentiary, Respondent.**

**Civ. No. 64–357.**

United States District Court
D. Oregon.
May 27, 1965.

A. I. Bernstein and Howard R. Lonergan, Portland, Or., for relators.

Robert Y. Thornton, Atty. Gen., and C. L. Marsters, Asst. Atty. Gen. of Oregon, Salem, Or., for respondent.

EAST, District Judge.

The relators seek federal habeas relief from the custody of the respondent, had pursuant to judgment of conviction and sentence entered by the Circuit Court of the State of Oregon for Union County.

The federal claim of unlawful conviction and sentence is that the relator's conviction and sentence was based upon evidence (burglars' tools, pistols and loot from a burglary) obtained

through an unreasonable search and seizure by Washington State police officers and turned over to Oregon authorities. Of course, the evidence is no more valid in the hands of the Oregon authorities than it was in the hands of the Washington authorities. State v. Krogness, 238 Or. 135, 138, 388 P.2d 120, and United States Supreme Court cases therein cited.

The relators timely but unsuccessfully moved to suppress the evidence, objected to its incriminatory use at their trial, and have exhausted their State of Oregon remedies in vindication of their federal claims within the purview of § 2254, Title 28 U.S.C.A. In Krogness, supra, the majority and dissenting opinions review the facts and circumstances surrounding the search and seizure most favorably and unfavorably to the State, respectively.

■ Suffice to say, Washington State Officer Chase observed the automobile occupied by the relators pass through a marked school crosswalk during school hours at a speed in excess of the maximum, and stopped it. The driver, who turned out to be the relator Hart, got out of the stopped car and walked back towards Officer Chase, who recognized Hart as being a person with a Seattle police record of at least one minor conviction. Officer Chase made a radio report that he had stopped Hart and two other subjects for a traffic violation, told Hart to remain in his police car, and approached the stopped car to verify the identities of Krogness and Russell, at which time he saw in plain view in the back seat of the stopped car a military-type rifle with a telescopic sight. Relators Krogness and Russell were then placed in other police cars which had arrived at the scene. At this point I agree with the majority opinion that:

"For all practical purposes (the relators), were under arrest from that moment, if they had not been before [Citing authorities] where it is said that the mere stopping of the motorist and placing him under the officer's direction constituted an arrest. [Citing authorities.]" Krogness, supra, p. 139, 388 P.2d p. 122.

Officer Chase's testimony before the trial court is to the effect that when he saw the rifle and recognized Hart, he believed that Hart and his companions had been hunting game illegally and that the stopped automobile was transporting illegal game animal or bird. Whereupon, he asked Hart for the car's luggage-compartment keys. Hart complied. Upon opening the luggage compartment, Officer Chase found a sack of coins bearing the name of a Pendleton bank and observed certain tools, whereupon other officers intensified the search of the car and the persons of the three relators, finding the evidence.

I also agree with the majority opinion that since the officers had no search warrant there could be no lawful search of the car or the persons of the relators and a resultant seizure of evidence, except for such a reasonable search as may be an incident of a lawful arrest. Krogness, supra, p. 138, 388 P.2d 120, and:

"As a general rule, the search must be reasonably related to the offense which prompts the arrest. The search may not, therefore, involve the luggage and other interior compartments of the vehicle merely because there has been a traffic arrest.

\*     \*     \*     \*     \*     \*

"Where the officer, *without trespassing* [emphasis supplied], sees contraband or other evidence reasonably causing him to believe that contraband is being transported or that \* \* \* he may have probable cause to make an arrest for the newly discovered offense as well as for the traffic offense which initially brought the subject to the attention of the officer \* \* \* Probable cause to arrest for the more serious offense, when present, will answer constitutional objections to the rigor of the ensuing search." Krogness, supra, pp. 144–145, 388 P.2d pp. 124–125.

■ However, I do not find any evidence in the record that Officer Chase, *without trespassing,* saw

(a) Contraband, or

(b) Evidence reasonably causing him to believe that:

1) contraband was being transported, or

2) another crime was being consummated in his presence,

which would warrant a man of reasonable caution in the belief that the fruits of a game law violation, or for that matter any other crime, were being transported in the stopped vehicle.

Officer Chase saw the rifle with the telescopic sight lying in plain view in the back seat of an automobile which he had stopped because of a traffic violation committed in his view. He saw three occupants, one of whom he recognized as a person with a police record involving one minor conviction, who were otherwise apparently law-abiding (except for the traffic violation) and cooperated with his commands.

Manifestly, the rifle, in and of itself, was not

(a) Contraband, or

(b) Evidence reasonably causing one to believe

1) Contraband was being transported, or

2) Another crime was being consummated in his presence.

Searching the record before the trial court as best one can, and short of common knowledge that rifles with telescopic sights are used to hunt game both legally and illegally, no fact or circumstance can be found or inferentially raised that Hart or his companions had been engaged in illegally hunting game and had illegal game animal or bird in the car.

Granted, Officer Chase through his policeman's intuition, may have had some suspicion concerning Hart and his companions, however, he did not have a fact or circumstance to his knowledge, or other reasonably trustworthy information, to warrant a man of reasonable caution in the belief that the stopped automobile was transporting illegal game animal or bird or the fruits or evidence of any other crime whatsoever. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1923).

Officer Chase's intuitive suspicion, created as it was solely by the casual open view of the rifle which was unrelated to some independently known or reliably reported fact or circumstance of an apparent crime in fact, was not only wholly insufficient to justify the later search for and seizure of the evidence,

"* * * [S]uspicion, or even 'strongest reason to suspect' was not adequate to support a warrant for arrest. * * * It was against this background that two scholars recently wrote, 'Arrest on mere suspicion collides violently with the basic human right of liberty.' * * * [and] good faith on the part of the arresting officers is not enough. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." Henry v. United States, 361 U.S. 98, 101, 80 S.Ct. 168, 171, 4 L.Ed.2d 134;

but also proved to be unfounded in fact.

In People v. Lopez, 60 Cal.2d 223, 32 Cal.Rptr. 424, 384 P.2d 16 (1963), which gave support to the majority in Krogness, supra, the searching officers had that additional indispensable ingredient which gave them "probable cause to believe" that the stopped vehicle was transporting contraband or fruits of a crime, namely,

They knew or had (to them) reliable reports that crimes of burglary *had in fact been committed* by unknown persons in the vicinity, with which they could relate the casually viewed and observed "red painted crowbar (innocent in and of itself) protruding from under the seat * * * of the automobile * * *" stopped for a traffic violation. The California officers' intuitive suspicion or assumption "* * * that the crowbar might have been used to gain

entrance to * * *" one of the known robbed stores was indeed a logical inference and gave rise to probable cause to a belief that the vehicle was transporting contraband or fruits of one or more of the known crimes.

Counsel for the relators aptly assert: "The sight of a rifle lying opening [sic] and lawfully on the back seat of a car, even in an area where there is game, when the automobile has only been observed travelling on a paved highway in the middle of the day in front of a school where there is *no knowledge* [emphasis supplied] of game shot, blood, or any game violation of any sort by anyone, or any idea when the rifle had been fired, or any knowledge of past game law violations by the defendants obviously lacks probable cause."

I hold as a matter of law that the undisputed facts, as revealed in the record before the trial judge and this Court, when viewed under federal standards as taught by Henry, supra, show that the Washington State officers' search of the stopped automobile and the persons of the relators was not related to the original arrest or any lawful subsequent arrest of the relators and was unreasonable and without probable cause.

The rub of this case lies in the fact that the Washington police officers, through a purely exploratory search, found the evidence to convict criminals who, but for the search, would have probably escaped successful prosecution. The ends do not justify the means—no society is better off through the out-and-out violation of an individual's Constitutional rights. The manifest spirit of the Fourth Amendment, as implemented through the Fourteenth Amendment, of the United States Constitution prohibits searches and seizures by state officers as disclosed in these proceedings, and this Court is obliged to recognize the relators' federal claim that their judgment of conviction and sentence, obtained through evidence tainted with such a search, is unlawful and must be set aside as being in contravention of the provisions of the United States Constitution.

The relators are entitled to an order of this Court providing that their judgment of conviction and sentence in the Circuit Court of the State of Oregon for Union County is vacated and set aside and that the relators should be granted a new trial upon the charges filed against them in that cause within 30 days from the date of the order, or a writ should issue in these proceedings discharging them from the custody of the respondent; providing, however, that execution of the order should be stayed pending lawful appeal thereof.

Counsel for the relators should submit appropriate order.