**Eduardo AMADOR–GONZALEZ, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 23480.

United States Court of Appeals Fifth Circuit.

Jan. 10, 1968.

As Modified, Rehearing Denied Feb. 23, 1968.

Joseph J. Rey, El Paso, Tex., for appellant.

Jamie C. Boyd, Asst. U. S. Atty., Mario J. Martinez, Asst. U. S. Atty., El Paso, Tex., for appellee.

Before WISDOM, COLEMAN and GODBOLD, Circuit Judges.

WISDOM, Circuit Judge:

The defendant, Eduardo Amador-Gonzalez, was convicted under a two-count indictment charging the unlawful importation and the knowing concealment of narcotics in violation of 21 U.S.C. § 174.[1] On this appeal, he raises issues re-

---

1. 21 U.S.C.A. § 174, in part, provides: "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or

garding the admissibility in evidence of a quantity of heroin taken from his car following his arrest by an El Paso police officer. He charges that the heroin was found as the result of an unlawful search and seizure. He also challenges the admissibility of an oral confession made to federal and state officers shortly after his arrest. The defendant's counsel made a timely motion to suppress these items. After a hearing, the court denied the motion. Counsel renewed the objection when the items were offered at trial. Again the court denied the motion. We find that the drugs were seized from the defendant in violation of the protection the Fourth Amendment affords against unreasonable searches and seizures.[2] The confession was a fruit of that unlawful search. Both the drugs and the confession are therefore inadmissible. We reverse the judgment of conviction.

## I.

The events leading up to the arrest of the defendant and the search of his car began late in the afternoon of September 14, 1965. At that time, two detectives from the Narcotics Division of the El Paso Police Department observed the Tartaglia brothers, known narcotics traffickers from Albuquerque, New Mexico, parking their car in a lot near the Santa Fe International Bridge. This bridge connects El Paso, Texas, and Juarez, Mexico. The detectives stopped the Tartaglias, whom they recognized, and questioned them. The officers learned that the Tartaglias intended to walk across the bridge and that they had $170 in cash between them. At the Customs House on the bridge they registered as narcotics violators and then crossed into Mexico.

The Tartaglias returned to El Paso a few hours later. They were met by Detective James E. Agan of the city police and United States Customs Agent Robert C. Johnson. The officers discovered that only a few dollars of the brothers' original $170 remained. Suspecting that the Tartaglias might be concealing narcotics, the officers took them to a hospital for a search of their persons.

Meanwhile, acting on the alternative suspicion that the Tartaglias might have given narcotics to someone else to carry across the border for them with arrangements for a rendezvous on the American side, Detective Joe Avalos posted himself in his unmarked car near the Tartaglias' car. According to Avalos's testimony, at eight o'clock that night, after he had been waiting about one hour, he saw the defendant Gonzalez driving an automobile with New Mexico license plates and a Mexican flag attached to the radio antenna. At that time Avalos did not know that Gonzalez had come from Juarez. Avalos testified that he saw Gonzalez drive several times around the block where the Tartaglia car was parked. Gonzalez then parked across the street, got out of his car, and waited in the area for about twenty minutes, every now and then turning his head in the direction of the bridge or the Tartaglia car. Finally Gonzalez got back in his car, again circled the area, and continued circling until, sometime later, Avalos stopped him.

Avalos had noticed that Gonzalez on several occasions had turned left sharply onto a two-way street, unlawfully cutting into the wrong lane. After finally

---

in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. * * *"

2. The Fourth Amendment provides: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

deciding to stop Gonzalez, Avalos telephoned for another car. The two police cars followed Gonzalez for five blocks before the officers made their arrest. During this time they clocked Gonzalez's car at thirty-six miles an hour in a thirty-mile zone.

Upon stopping the defendant's car, Avalos asked for his driver's license. On learning that he had none, the officer asked Gonzalez where he lived. When Gonzalez said that he was from Juarez, Mexico, Avalos asked for his passport or local crossing card. Avalos saw that the defendant's name was Amador-Gonzalez and, according to his testimony, was struck by the thought that the defendant might be related to Ignacia Jasso Gonzalez, otherwise known as "La Nacha", the "Dope Queen of Juarez", considered a major supplier of narcotics in that city. He did not then know that defendant is in fact the grandson of "La Nacha".

During the questioning by Avalos, with the two uniformed officers nearby, the defendant stepped out of his car, leaving the front door open. Avalos testified, "there was a bump on the front seat right next to where the driver sits, the upholstery was torn, and I reached in there and lifted up this piece of torn upholstery and picked up this rubber bundle out of there." It contained about three grams of heroin. The government introduced the bundle as evidence at the trial.

Detective Avalos and the two uniformed officers took the defendant to the Customs Office located at the Bridge. There they met Agent Johnson and Detective Agan who had returned from the hospital after the Tartaglias had been searched and no drugs had been found on them. The uniformed officers then wrote out three traffic tickets, which Avalos signed, charging the defendant with making an improper left turn, speeding, and failing to have a driver's license. The two detectives, Agent Johnson, and Customs Inspector Guillermo Perez escorted Gonzalez to the El Paso police station. Johnson then interrogated him. After a few hours, Gonzalez confessed to helping the Tartaglias smuggle into Texas heroin bought from "La Nacha" in Juarez. Shortly after midnight he was booked on charges of vagrancy and possession and importation of heroin. The next day he was transferred to the county jail on a charge of possession of heroin. On that day, September 15, 1965, Agent Johnson filed a complaint with the United States Commissioner, charging the defendant with violation of 21 U.S.C. § 174. Gonzalez was never booked on the traffic offenses and the record reveals no disposition of those charges.

## II.

The Supreme Court has pointed out that it is only "unreasonable searches that are prohibited by the Fourth Amendment". United States v. Rabinowitz, 1950, 339 U.S. 56, 60, 70 S.Ct. 430, 432, 9 L.Ed.2d 653. But the Court has also emphasized that there are few exceptions to the requirement of a warrant as an essential protection of the Fourth Amendment:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise by ferreting out crime. * * * When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent. Johnson v. United States, 1948, 333 U.S. 10, 13, 68 S.Ct. 367, 369, 92 L. Ed. 436.

If restrictions of the Fourth Amendment on official intrusions into the privacy of citizens are to be meaningful, courts must scrutinize searches and seizures allegedly coming within recognized

exceptions to the requirement of a warrant.

A. This case does not come within the "plainsight" exception established in Marron v. United States, 1927, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 213. This rule permits an officer to investigate and seize property visible to him without a search, if he is lawfully in a position enabling him to see the object seized. In our recent decision in Nunez v. United States, 5 Cir. 1967, 370 F.2d 538, local officers had stopped an automobile when the driver had appeared to be driving recklessly, and had discovered a sawed-off shotgun, the possession of which formed the basis for the federal prosecution. In that case the court found that "there was ample evidence to support the conclusion that the weapon involved was clearly visible to the officers without a detailed search of the automobile." 370 F.2d at 539. In the case now before the court, the heroin under the upholstery cannot be said to have been "clearly visible".

B. The search did not constitute a "border" search under federal statutes permitting warrantless search of persons and vehicles entering this country. Kelly v. United States, 5 Cir. 1952, 197 F.2d 162; King v. United States, 5 Cir. 1958, 258 F.2d 754; Davis, Federal Searches and Seizures 368–373 (1964). Under 19 U.S.C. §§ 482, 1581, 1582, the person conducting the search must be an officer authorized by the United States to make such searches, and such search of persons, vehicles, and effects must be related to the entry of contraband or dutiable merchandise into the the United States. Here the search fails to meet either of these requirements.

C. Finally, the search was not within the Carroll doctrine permitting warrantless search of a vehicle not incident to arrest when an officer has probable cause to believe that the vehicle is being used to carry contraband. Carroll v. United States, 1925, 267 U.S. 132, 45 S. Ct. 280, 69 L.Ed. 543 (a seizure under express statutory authority); United States v. Di Re, 1948, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Scher v. United States, 1938, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151; Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; 1 Varon, Searches, Seizures and Immunities 108 (1961). Here the only grounds that could give rise to probable cause were the defendant's circling the block where the Tartaglias's car was parked; license plates of New Mexico, the state where the brothers lived; and, perhaps, a Mexican flag on the antenna, at a time near the Mexican Independence Day. Avalos was an experienced narcotics officer in the El Paso region, but did not recognize the defendant as a known trafficker, as he had the Tartaglias. Nor did he have any reason beyond those mentioned to connect Gonzalez with the brothers. Moreover, at the time he stopped the defendant he had not learned that the Tartaglias had been searched and that they were not in possession of drugs. Carroll and Brinegar require that probable cause exist at the time the vehicle is stopped. Accordingly, we may not consider the additional facts that came to light in the initial questioning of the defendant.

In Brinegar the Supreme Court stated that probable cause means more than a bare suspicion and exists when the facts within the knowledge of officers are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed. 338 U.S. at 175, 69 S.Ct. 1302. Considering each ground for suspicion and the totality of circumstances, we hold that there was no probable cause to conduct the search. Since the Carroll doctrine is inapplicable, the instant case does not raise the question whether, because of the arrest of Gonzalez and the police custody of the car, there was ample time for the officers to obtain a warrant. See Preston v. United States, 1964, 376 U.S. 364, 84 S. Ct. 881, 11 L.Ed.2d 777; Staples v. United States, 5 Cir. 1962, 320 F.2d 817, 920.

### III.

The United States relies on the well-recognized exception that as an incident to arrest, either with or without a warrant, the arresting officers may search the person arrested and his immediate surroundings. Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L. Ed. 1399; United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.

 A. The rationale for the search incident to arrest exception is the historical right of an arresting officer to search the place of arrest and the practical consideration that once an arrestee's privacy is invaded by his being placed in lawful custody, there is little or no additional invasion in searching him or the immediate surroundings which the police have entered to effect the arrest. Again, however, fidelity to the Fourth Amendment commands that the exception not engulf the rule. The lawfulness of an arrest does not always legitimate a search. General or exploratory searches are condemned even when they are incident to a lawful arrest. United States v. Rabinowitz, 339 U.S. at 62, 70 S.Ct. 430, 94 L.Ed. 953, Carlo v. United States, 2 Cir., 1961, 286 F.2d 841, 846. The arrest must not be a mere pretext for an otherwise illegitimate search. Henderson v. United States, 4 Cir. 1926, 12 F.2d 528, 51 A.L.R. 420; Worthington v. United States, 6 Cir. 1948, 166 F.2d 557; McKnight v. United States, 1950, 87 U.S.App.D.C. 151, 183 F.2d 977; United States v. Harris, 6 Cir. 1963, 321 F.2d 739; Taglavore v.

United States, 9 Cir.1961, 291 F.2d 262. The search must have some relation to the nature and purpose of the arrest. Taglavore v. United States, supra; Charles v. United States, 9 Cir. 1960, 278 F.2d 386; United States v. Tate, D.Del. 1962, 209 F.Supp. 762; United States ex rel. Krogness v. Gladden, D.Ore.1965, 242 F.Supp. 499.

Gonzalez was arrested for a minor traffic offense. It is not clear at just what time the traffic arrest turned into a narcotics arrest,[3] but it could not have been until *after* the search. Until that time there was no probable cause to believe that the vehicle was transporting narcotics and no probable cause to make an arrest for the possession of drugs. See Henry v. United States, 1959, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 184, in which the Supreme Court held that the defendant's arrest took place when the officers stopped his car, even though a formal arrest was made at a later time, and the "fact that afterwards contraband was discovered is not enough" to legitimatize the search.

 State law determines the lawfulness of arrests by state officers, subject, of course, to constitutional restraints. Collins v. United States, 5 Cir. 1961, 289 F.2d 129, 131. Texas law authorizes any peace officer to arrest without a warrant any person seen committing a violation of the traffic regulations.[4] It is undisputed here that at the time Detective Avalos decided to stop the defendant, that is, when he called for the assistance of the patrol car, Gonzalez had made several illegal turns, and that by

---

3. Avalos acknowledged at the hearing on the motion to suppress that he "wanted to search the car, that is why [he] wanted to reach" the defendant. The traffic tickets were not written out until after the defendant had been taken to the Customs Office at the Bridge, by which time the concern of the officers was principally with the narcotics offense. He testified as follows:

"Q * * * you had narcotics in your mind?

A Yes, sir.

Q You connected this defendant's car with narcotics?

A Yes, sir."

Record, p. 32

"Q What were you looking for him for?

A We thought he was connected with the narcotics, we suspicioned him of being connected with the narcotics with this other car that we had under surveillance."

4. Tex.Rev.Civ.Stat.Ann. art. 6701d, § 153 (1960).

the time the arrest was made, he had also been clocked at a speed above the speed limit.

■ In the circumstances of this case, the arrest, no matter how lawful in itself, cannot support the search. It is clear from the testimony of Avalos that the real purpose for making the arrest was to search the defendant's car. Narcotics officers do not generally make traffic arrests; Avalos testified that they do not carry ticket books. Traffic arrests are usually made immediately upon the commission of the offense. In this case, however, the detective had observed the defendant make the same improper turns several times over a period of about an hour. While a delayed arrest is not necessarily improper, and at times may be good police practice, "every time there is a delay in the making of the arrest and there is a search made as incidental to the arrest, the law enforcement officers take the risk that they will be charged with using the arrest as a mere pretext for the search." Carlo v. United States, 2 Cir., 1961, 286 F.2d 841, 846. In Taglavore v. United States, 9 Cir. 1961, 291 F.2d 262, the defendant was arrested on warrants for traffic offenses that had occurred the previous day. The arrest was made, however, because the police suspected that he had marihuana cigarettes on his person, a suspicion that proved to be correct and led to his prosecution. The court found that the arrest was a mere sham and that the evidence thus discovered could not be received: "the police engaged in a deliberate scheme to evade the requirements of the Fourth Amendment by using a traffic arrest * * * to search appellant for narcotics they suspected he had on his person." 291 F.2d at 267.

■■ A search incident to an arrest must have as one or more of its purposes the discovery of (1) the fruits of the crime; (2) instrumentalities used to commit the crime; (3) weapons or like material which put the arresting officer in danger or might facilitate escape; (4) contraband, the possession of which is a crime (Preston v. United States, 1964, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777; Agnello v. United States, 1925, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145), and, by a recent decision, (5) material which constitutes evidence of the crime or evidence that the person arrested has committed it (Warden v. Hayden, 1967, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782).[5] Purposes 4 and 5 have no application here, because

5. In his special concurring opinion, Judge Godbold characterizes this list as "overly generalized" and as freezing "in amber" the permissible purposes of a constitutionally lawful search *incident to arrest.* The categories, however, are those which the Supreme Court has long followed, and has quite recently reaffirmed. Katz v. United States, 1967, 389 U.S. 347, 357 n. 20, 88 S.Ct. 507, 19 L.Ed. 2d 576. Although the impounding of a vehicle is often lawful police practice, Williams v. United States, 5 Cir. 1967, 382 F.2d 48, 50, and in some circumstances may be related to an arrest, Cooper v. State of California, 1967, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, any search which may then follow is incidental to the *impounding,* not to the arrest. *Ibid.* An appearance of illness, arising at or near the time of arrest, may justify a search for medication, but this is incident to a distinct police activity, not causally related to the arrest.

In Williams v. United States, the automobile was legally impounded by local police as abandoned. The search was not incident to arrest, but incident to the impounding. The Court held that "this does not give the postal inspectors the authority to search the automobile without a warrant under the circumstances of this case." 382 F.2d at 50.

The recent decision in Katz v. United States, holding that in proper circumstances a warrant may issue authorizing the "seizure" of spoken words through eavesdropping, cannot be read to expand the categories of things which may be seized during a search incidental to an arrest, for, as the Court points out, "the concept of an 'incidental' search cannot be readily expanded to include surreptitious surveillance of an individual either immediately before, or immediately after, his arrest." 389 U.S. at 357 n. 20, 88 S.Ct. at 515 n. 20.

they require probable cause as a predicate for the search. There are of course no "fruits" of the sort of traffic offenses Gonzalez may have committed. The only instrumentality is the car itself. The officers appeared to be in no danger: The defendant was outside of his car at the time of the search and virtually surrounded by three police officers. Indeed, Avalos even acknowledged that he was in fact looking for narcotics.[6]

■ On the record before us, the evidence clearly demonstrates that the arrest of Gonzalez was a pretext to enable the arresting officers to search Gonzalez and his car. My brothers agree that the search was therefore unreasonable.

■ B. I would go further. I would hold that, pretext or no pretext, a lawful arrest of an automobile driver for a traffic offense provides no lawful predicate for the search of the driver or his car—absent special circumstances.

My brothers, however, who concur in the result, say, "Legality of a search conducted after a traffic arrest which has not been made for an improper motive is not involved in this litigation and not hammered out as an issue between the parties." Relying on the *Ashwander* doctrine, they would refrain from passing upon the lawful scope of a search incident to a valid traffic arrest. But the Government in the trial below and before this court, in oral argument and in its brief, took the broad position that a search incident to any valid arrest is lawful.[7] Here the arrest

was valid. The pretextual motivation did not vitiate the validity of the arrest; Gonzalez admittedly violated local traffic laws. The question before us is the validity of a search made after a lawful arrest for a traffic offense.

■ There is a similarity between the effect of a "pretextual arrest" and the effect of an unlawful arrest, but the two cannot be equated. Proof that a traffic arrest was only a pretext to search for evidence of another offense is significant legally only because it bears on the reasonableness of the search. Search incident to arrest is unreasonable, if there is a lack of relation between the search (or scope of the search) and the offense for which the arrest was made. That lack of relationship exists without regard to the motivative cause of the arrest when, as in this case, an automobile driver is arrested for making the wrong turn but is searched for narcotics.

■ In this case one of the agents admitted that he arrested Gonzalez in order to search the automobile for narcotics. More often, the determination of the motivation for an arrest requires some judicial divination of the subjective mind. We will have fewer unconstitutional searches, if the emphasis is on the objective relationship between the nature of the offense and the nature (circumstances) of the search, rather than on the motivative cause of the arrest.

Most state courts hold that it is unlawful for the police to search a motor vehicle following an arrest for a minor traffic violation.[8] Judge Nathan R. So-

---

6. See footnote 3.

7. The opening paragraph of the argument on this point in the brief for the Government reads:

"Appellee contends that the arrest of the defendant was lawful because the arresting officer had observed him commit numerous traffic violations preceding the arrest. The ensuing search which produced the seized heroin was not unreasonable since it was contemporaneous with and incident to a lawful arrest."

The brief then goes on to attempt to support this statement relying on Texas and federal authorities.

8. The state court decisions are collected in Annotation, Lawfulness of Search of Motor Vehicles Following Arrest for Traffic Violations, 10 A.L.R.3d 314. The general rule is that no search may be made as an incident to a traffic arrest. "Most traffic violations are of such a nature that there are no fruits of the crime and no instrumentalities of the crime other than the motor vehicle.

bel of the New York Supreme Court states the rule as follows:

The question arises—

*"Do the police have the right to search the person or automobile following a lawful arrest for a traffic violation?"* The answer is an unequivocal "NO!" despite many cases to the contrary. The reason is simple.

Therefore, a search incidental to an arrest for a traffic violation can not, in general, be justified as a search for fruits or instrumentalities of the crime." Rothblatt, The Arrest: Probable Cause and Search Without a Search Warrant, 35 Miss.J.Jour. 252, 265. "The overwhelming weight of the case law holds that there is no right to search either the occupants of the car or the car itself when arrest is made for an ordinary traffic offense". George, Constitutional Limitations on Evidence in Criminal Cases, Inst. of Continuing Legal Education, 23 (1966). But see Watts v. State, Miss.S. Ct.1967, 196 So.2d 79.

The present state of the law is well summarized in a recent publication in the FBI Enforcement Bulletin: "As the foregoing discussion has indicated, the search incident to arrest must be confined to fruits, instrumentalities, contraband, and mere evidence of the crime for which the arrest was made and to weapons of injury or escape. Abel v. United States, 362 U.S. 217, 238, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Agnello v. United States, 269 U. S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); United States v. Barbanell, 231 F.Supp. 200 (1960). The arrest merely serves the function of a search warrant for things seizable in connection with that particular offense. Papani v. U. S., 84 F.2d 160 (1936). * * * Obviously, a search cannot be made where there is no tangible evidence connected with the arrest offense. That is usually the case where violations of motor vehicle codes are involved. With the exception of driving while under the influence of alcohol or narcotics, there are few traffic offenses in which any object other than the vehicle itself can be considered evidence of the crime. Thompson v. State, Tex.Cr.App., 398 S.W.2d 942 (1966); Richardson v. State, 163 Tex.Cr.R. 585, 294 S.W.2d 844 (Tex.

An "incidental" search is the exception to the command of the Constitution that all searches be with search warrants. The incidental search must be truly incidental to a primary purpose to arrest. Since incidental searches are limited to fruits of *the* crime or instrumentalities used in the commission of *the* crime *for which the arrest is made,* there can be no lawful

Crim.1956); Brinegar v. State, 262 P.2d 464 (Okl.Cr.1953); Church v. State, 206 Tenn. 336, 333 S.W.2d 799 (Tenn.1960); State v. Taft, 110 S.E.2d 727 (1959); See also, People v. Lujan, 141 Cal.App.2d 143, 296 P.2d 93 (1956) (arrest for driving while under influence of drugs held to support search of entire vehicle for narcotics). For this reason, the search incident to a traffic arrest is not permitted in most jurisdictions. State v. Michaels, 60 Wash.2d 638, 374 P.2d 989, 992 (1962) ('A search of the automobile could reveal nothing useful in establishing the offense for which the defendant was arrested—failure to signal for a left turn— and there was no reason to suspect that he would attempt to flee with the aid of something that might be found in the trunk of his car.'); Barnes v. State, 130 N.W.2d 264 (Wis.1964) ('There are no fruits or instrumentalities connected with the offense of driving a vehicle with a defective tail light.'); United States v. One 1963 Cadillac Hardtop, 25 Wis.2d 116, 224 F.Supp. 210 (1963) ('In the case of a stop sign violation there is no fruit of the crime. The means whereby the crime was committed is the vehicle itself.'); United States v. Tate, 209 F. Supp. 762 (1962) ('There are no fruits of speeding.'); Travers v. United States, 144 A.2d 889 (D.C.Mun.App.1958)." Search of Motor Vehicles, 9th of Series, FBI Enforcement Bulletin, November 1967, pp. 19, 24, 25.

See Simeone, Search and Seizure Incident to Traffic Violations, St. Louis U. L.J. 506 (1961) and Agata, A Reply to Professor Simeone, St. Louis U.L.J. 1 (1962) for a discussion of the question whether "the fact of arrest is never sufficient to justify a search incident to an arrest for a traffic violation unless there are additional circumstances apparent to the policeman to justify a search". Agata at p. 2. See also Ringel, Arrests, Searches, and Confessions, (1966) 304, 308; Sobel, Search and Seizure 119–27 (1964); 1 Varon, Searches, Seizures, and Immunities, 107–108, 203–205 (1961).

incidental search following an arrest for a traffic violation. There are no fruits or instrumentalities of the "crimes" of unlawful parking, speeding, driving without registration or license, or driving while intoxicated (an exception exists with respect to the latter in permitting search for open bottles of liquor). Since there are no fruits or instrumentalities of such crimes, there can never be a reasonable incidental search no matter how lawful the "arrest".

For whenever a search is made following an arrest for a traffic violation the primary purpose is no longer to arrest but rather to search for "evidence" of entirely unrelated crimes. Such a search is ipso facto general and unreasonable. There are *no* exceptions to this rule. Sobel, Search and Seizure 119 (1964).

I share the views of Justice Walter V. Schaefer of the Illinois Supreme Court as expressed in People v. Watkins, 1960, 19 Ill.2d 11, 166 N.E.2d 433, 436:

"The critical issue in each case must be whether the situation that confronted the officer justified the search. * * * A uniform rule permitting a search in every case of a valid arrest, even for minor traffic violations, would greatly simplify our task and that of law enforcement officers. But such an approach would preclude consideration of the reasonableness of any particular search, and so would take away the protection that the constitution is designed to provide. Other courts are in accord. They have refused to establish a uniform rule to govern all searches accompanying valid arrests, but rather have examined the nature of the offense and the surrounding circumstances to determine whether the search was warranted. * * * A search incident to an arrest is authorized when it is reasonably necessary to protect the arresting officer from attack, to prevent the prisoner from escaping, or to discover fruits of a crime. * * * But when no more

is shown than that a car was parked too close to a crosswalk or too far from a curb, the constitution does not permit a policeman to search the driver. * * * "

The federal cases which have considered the question hold that *absent special circumstances*, not present here, a search of the vehicle not related to the nature of the offense for which the arrest is made is impermissible. United States v. Tate, D.Del.1962, 209 F.Supp. 762; United States ex rel. Krogness v. Gladden, D.Ore.1965, 242 F.Supp. 499. "[A] minor traffic violation will not generally justify a search of the vehicle and its passengers." United States v. One 1963 Cadillac Hardtop, E.D.Wis.1963, 224 F. Supp. 210 (citing four state cases). As Justice Sobel points out, however: "It is respectfully suggested that no exigent circumstances (not amounting to probable cause) *ever* justifies an incidental search for a traffic violation arrest. The Courts which so hold overlook the fundamental principle that an incidental search is exceptional and subordinate and must be *solely incidental to a primary purpose to arrest.*

The federal cases upholding searches incident to traffic arrests are usually based on information that became readily apparent after the vehicle was stopped, creating the probable cause necessary to conduct an extensive search. Nunez v. United States, 5 Cir. 1967, 370 F.2d 538. United States v. Owens, 7 Cir. 1965, 346 F.2d 329, cert. denied, 382 U.S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119; United States ex rel. Murphy v. New Jersey, D.N.J. 1965, 260 F.Supp. 987. This was the basis of our recent decision in Mendoza v. United States, 5 Cir. 1966, 365 F.2d 268. There the arresting officer in the course of a routine traffic arrest observed that the occupants of the automobile had the identifying marks of narcotics users. This observation gave rise to probable cause to believe that they might be carrying narcotics, and thus justified a search of the person. *Mendoza* should not be read as holding that

*any* search incident to a traffic arrest is justified. Cf. Sumrall v. United States, 10 Cir. 1967, 382 F.2d 651.

The Government cites, as does Judge Godbold, the per curiam opinion of this court in Jackson v. United States, 5 Cir. 1965, 352 F.2d 490, as supporting the conclusion that once a valid traffic arrest has been made, *any* search of the vehicle stopped is valid. The opinion does not set forth the circumstances relating to the search. The record shows however that the arresting officers knew that the defendant's driver's license had been suspended for a year. They followed him at speeds of as much as 70 miles an hour. In the course of their pursuit a door of the defendant's car came open and fruit jars of whiskey began falling out. When the defendant finally stopped, there was a decided odor of whiskey coming from the car and on the back seat there were 11 gallons of non-tax-paid whiskey in half-gallon fruit jars. It was a clear case, therefore, of readily visible contraband. One sentence in the opinion, read alone, is broad enough to support the Government's contention. After finding that a valid arrest for driving without a license had been made, the court concluded:

"That being so, the search that was made of the vehicle at the time the arrest was completed, was permissible under the well recognized authorities. See United States v. Williams, 6 Cir., 314 F.2d 795, and Kelly v. United States, 5 Cir., 197 F.2d 162." Jackson v. United States, 5 Cir. 1965, 352 F.2d 490 at 491.

The cases cited in the *Jackson* per curiam support the Court's holding on the facts but do not stand for the conclusion that any search incident to arrest is valid. In *Williams* the defendant led the police in breakneck speed through the City of Knoxville, sometimes at speeds in excess of seventy-five miles an hour. The defendant's car overturned, causing the trunk to open, disclosing bootleg whiskey clearly visible to the officers without a search when they reached the car. *Kelly* involved a search by members of the United States Border Patrol for aliens at a place near a border checkpoint. It can be considered a traffic incident only in the sense that the officers stopped the defendant's vehicle after chasing it at high speeds. It was not a search incidental to an arrest, but came under the special statutory authority for border searches.

The significant element in this case is the danger that the lowly offense of a traffic violation—of which all of us have been guilty at one time or another—may be established as the basis for searches circumventing the rights guaranteed by the Fourth Amendment. This danger exists in lawful traffic arrests as well as in pretextual arrests. There are no fruits, instrumentalities, and contraband reasonably connected with an automobile driver's improper turn, speeding, and failure to have a driver's license—regardless of the arresting officer's motives.

### IV.

Since the Court has determined that the heroin was illegally seized, we hold that the confession, resulting from that seizure and the subsequent narcotics arrest, was the "fruit of the poisoned tree" and therefore inadmissible. After the narcotics were discovered the defendant was taken to the El Paso Police Station with only a brief stopover at the Customs House on the way. At the station the officers informed him that he was under arrest for violating the federal narcotics laws and immediately began to question him. His alleged oral confession, made within the next few hours, appears to have been a direct result of the discovery of the narcotics. The court is forced to conclude that the taint of the evidence illegally seized had not been removed. Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Thus the confession falls with the inadmissibility of the evidence that invoked the confession.

\* \* \*

Courts are reluctant to reverse a criminal conviction on procedural grounds when there has been a jury verdict supported by strong evidence of guilt. But the Bill of Rights is a basic premise on which our system of law and order rests. It is engraved on the conscience of the court, to be heeded in a narcotics case no less than in any other case.

The judgment of the lower court is reversed with instructions to dismiss the indictment.

COLEMAN, Circuit Judge (concurring in the result):

I concur in the result and in all of the opinion except portions of Part III, particularly Section B thereof. As always, Judge Wisdom has written a most thorough, scholarly opinion. In my view, however, the decisive point is that as to traffic violations the arrest in this case was pretextual. We do not, therefore, reach, and it is unnecessary to express an opinion on, the validity or invalidity of searches executed when an officer does make a bona fide arrest for a traffic violation committed in his presence.

GODBOLD, Circuit Judge, (specially concurring):

There was probable cause for the traffic arrest, but the acknowledged motive for making the arrest was to search the car for narcotics. Under uniform authority well set out by Judge Wisdom such a search is invalid, and the evidence obtained from the search and the incriminating statement which is the fruit thereof must be suppressed. Therefore, I concur in the result.[1]

Legality of a search conducted after a traffic arrest which has not been made for an improper motive is not involved in this litigation and not hammered out as an issue between the parties. Justice Brandeis' statement of rules of policy for passing on constitutional questions is still valid. "The Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it.' * * * The Court will not 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' * * * The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346–347, 56 S.Ct. 466, 483, 80 L.Ed. 688, 711 (1936) (concurring opinion).

This case presents no reason for departing from that policy; in fact, it demonstrates the desirability of the rule of restraint in decision of constitutional issues. Search after traffic arrest is in a sensitive, developing and difficult area of the law, and the authorities and the underlying considerations are in conflict. Agencies of government, especially those engaged in criminal law enforcement, are entitled to full opportunity to participate in, brief and argue if they wish, a headon determination of the issue and to do so in a context in which it is appropriately raised for decision.

In Jackson v. United States, 352 F.2d 490 (5th Cir. 1965) there was in issue the validity of an automobile search after a traffic arrest. Defendant claimed the arrest was pretextual; the district court found it not so. On appeal this court held the finding of the district court not clearly erroneous, hence the search at the time of arrest permissible. *Jackson* is a less than full consideration, but the present case is not the appropriate vehicle for determining whether to overrule it.

I am not able to agree with the overly generalized language that "a search incident to an arrest must have as one or

---

1. This case does not involve validity of the *arrest*, therefore, I do not at this time explore whether in a situation where probable cause exists an arrest made for the primary purpose of making a search to be justified as incidental to the arrest, may be unreasonable in constitutional terms and therefore invalid. It may be. Taglavore v. United States, 291 F.2d 262 (9th Cir. 1961); Worthington v. United States, 166 F.2d 557 (6th Cir. 1948); Henderson v. United States, 12 F.2d 528 (4th Cir. 1926); Restatement (Second) of Torts § 127 (1965).

more of its purposes the discovery of [listing five categories]." The language can refer to search of the person of the accused, to search of physical premises and to search of an automobile (a specialized kind of "premises"). These varying kinds of searches cannot with accuracy be treated together indiscriminately under one generalized rule that purports to stake out the limits of the entire field.

"Common sense dictates, of course, that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motorcar."

Preston v. United States, 376 U.S. 364, 366–367, 84 S.Ct. 881, 11 L.Ed.2d 777, 780 (1964). In the particular case of automobiles, chiefly because of their mobile nature, there are circumstances under which a search may be made incident to arrest for purposes other than discovery of the enumerated items. If incident to arrest a vehicle is impounded for reasons other than containing contraband—it simply may be necessary to remove it from the street—the police may have not only a right but a duty to search the vehicle to safeguard its contents and to protect themselves from subsequent claims that contents are missing. Williams v. United States, 382 F.2d 48 (5th Cir. 1967). If at the moment of arrest an accused lapses into what appears to be a diabetic coma the arresting officer may search in his pockets, and if he was in an automobile look in the glove compartment for emergency medication.

Many varying circumstances will continue to arise, so I do not indicate that with the addition of these examples the list is complete, only that the constitutional test of search and seizure is reasonableness, which is not to be either delineated or frozen in amber by a restatement of purposes that are stated to be the only ones constitutionally allowable.

PER CURIAM:

The Petition for Rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Rule 25(a), subpar. (b), the Petition for Rehearing En Banc is DENIED.