THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EDWARD LEWIS, Appellant.

First Department, December 18, 1969.

*Max Feigin* for appellant.

*Bennett L. Gershman* of counsel (*Michael R. Juviler* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

McGIVERN, J. This is an appeal from a judgment entered June 10, 1968, County of New York, convicting the defendant, after trial before a court and jury, of the crime of possession of a weapon as a felony (Penal Law, § 265.05).

The appeal is singular in that the District Attorney in his brief on this appeal, agreeing with the defendant, states '' that under the circumstances of this case, the search of the automobile was improper and, accordingly, concede that the judgment be reversed.'' We however, do not agree. Nor need we accept his suggestion. '' Confessions of error are, of course, entitled to and given great weight, but they do not ' relieve this Court of the performance of the judicial function.' *Young* v. *United States,* 315 U. S. 257, 258 (1942).'' (*Sibron* v. *New York,* 392 U. S. 40, 58.)

As we read the record of the suppression hearing and the trial, the defendant offering no evidence, the following facts emerge: Patrolman Beedenbender of the New York City Police Department was on radio motor patrol on December 5, 1967. At about 2:45 P.M., at about 153rd Street and Broadway, Manhattan, he descried an automobile bearing a Virginia license plate. In the car were three men. At the wheel was a man he recognized; he had arrested him as recently as August for a violation of section 1752 of the Penal Law (narcotics; dismissed) and concerning him he had information from the Bureau of Criminal Identification that there was an outstanding warrant for his arrest, for a violation of section 1308 of the Penal Law (criminally receiving stolen property). At the corner of 153rd Street and Amsterdam Avenue, the Patrolman stopped the vehicle. The driver said '' What did I do now? '' The officer requested him to produce his driver's credentials and directed him to a nearby precinct station house for further investigation. This done, the officer verified that the defendant was in fact a wanted man, and that the warrant for him was still in force and effect. On the spot, he placed him under arrest, and proceeding out of doors, he searched the vehicle, which meanwhile

had been under continued guard. Under the front seat, on the driver's side, he found a loaded .45 calibre revolver. The other two occupants of the car were then immediately placed under arrest. The defendant was searched. On him was found "a .45 calibre shell with a partial load clip broken off, attached to the primer cap." On the main trial, (Mr. Justice ARTHUR MARKEWICH) the testimony demonstrated this bullet fitted the gun and the gun was the defendant's.

As for the time element involved, the following colloquy appears in the record of the suppression hearing (Mr. Justice JACOB MARKOWITZ):

" Q. In fact, officer, in order to get to the car you had to go down the stairs back onto the first floor; is that correct? A. Yes, sir.

" Q. Then you had to go out of the precinct and onto the street; is that true? A. Out of the station house to the car which was parked immediately in front, yes, sir.

" THE COURT: That took probably, to go down a flight of steps and walk out the front door, how long did it take you?

" THE WITNESS: Well, your Honor, the time lapse itself was entirely taken up in verifying the fact that the warrant and so forth was still in force.

" THE COURT: We're talking about —

" THE WITNESS: Approximately a minute, a minute and a half."
And later on we find the following:

" Q. What was your purpose in making the search? A. It's customary after a defendant is placed under arrest to search both the defendant and any vehicle that he may occupy.

" THE COURT: That is police practice?

" THE WITNESS: Right, sir.

" THE COURT: And it's recognized as police practice?

" THE WITNESS: Yes, sir.

" THE COURT: In fact, those are your instructions?

" THE WITNESS: Correct, sir."

And the court (Mr. Justice JACOB MARKOWITZ) in his opinion, said, " I am satisfied that the search of the automobile happened within minutes after the defendant was taken to the police station ".

We conclude that on the record before us, there is revealed a sufficient unity of time and place, attendant upon the defendant's arrest to justify the search. (*Terry* v. *Ohio,* 392 U. S. 1, 30; *Cooper* v. *California,* 386 U. S. 58; *Sibron* v. *New York,* 392 U. S. 40; see, also, *People ex rel. Muhammad* v. *Mancusi,* 301 F. Supp. 1100 [U. S. Dist. Ct., S. D. N. Y., July 21, 1969].) The constitutional validity of a warrantless search must be " decided

in the concrete factual context of the individual case " (*Sibron* v. *New York, supra*, p. 59); and the privilege against governmental intrusion " must be shaped by the context in which it is asserted " (*Terry* v. *Ohio, supra*, p. 9). The rubric of police conduct must be measured by the reasonableness of a particular search or in the light of particular circumstances. The exigent circumstances justifying the incidental search of the car include not only the contemporaneous preceding arrest of defendant but the continued occupancy of the car by his two guarded companions, a fact which called for a neutralization of possible exposure to danger and loss of valid custody. The fact that it was a recognized police practice to search cars occupied by persons lawfully arrested does not mitigate against the validity of the search incident to the arrest under the facts here disclosed.

To the foregoing conclusion, the case of *Preston* v. *United States* (376 U. S. 364) is not a contrary holding. In that case, the car had been towed away some distance to a garage. Here, *there was continued occupancy of the vehicle* at the scene by the defendant's two companions, under *unbroken surveillance.* There was neither remoteness of time nor place. As *Preston* said (p. 367): " Unquestionably, when a person is lawfully arrested, the police have a right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons ". And the New York cases are similar. (*People* v. *Montgomery*, 21 A D 2d 904; *People* v. *Hatch*, 25 A D 2d 606; *People* v. *Moschitta*, 25 A D 2d 686. See, also, *People* v. *Goldstein*, 60 Misc 2d 745.)

In the case of *People ex rel. Muhammad* v. *Mancusi* (*supra*) the defendant was arrested at a bank, and his brief case taken from him. Twenty minutes later, at the F.B.I. headquarters, at another part of town, the brief case was searched, without a warrant. Despite the difference of both time and geography, the court, distinguishing *Preston,* sensibly said, and so say we here: " Under the facts of this case as set forth above, I find that the search was not ' remote in time or place from the arrest ' within the contemplation of the decided cases."

The recent case of *Chimel* v. *California* (395 U. S. 752) is not in disharmony with the view of the majority herein. That case dealt with the search of an *apartment,* without a search warrant, whereas we are considering the search of an *automobile* occupied by the companions of a criminal, lawfully arrested, which automobile could have and actually did have a concealed weapon. And this weapon could have been used against the police officers to effect an escape. Thus, the search of the vehicle, under " the

facts and circumstances — the total atmosphere of the case ",
was a sufficiently grave emergency, incident to defendant's
lawful arrest, and a wholly rational and reasonable procedure.
In support of this view, *Chimel* significantly says: " Our holding
today is of course entirely consistent with the recognized princi-
ple that, assuming the existence of probable cause, automobiles
and other vehicles may be searched without warrants ' where
it is not practicable to secure a warrant because the vehicle can
be quickly moved out of the locality or jurisdiction in which the
warrant must be sought.' *Carroll* v. *United States,* 267 U. S.
132, 153; see *Brinegar* v. *United States,* 338 U. S. 160." (Justice
STEWART speaking for the majority, p. 764, n. 9.) The dissent in
*Chimel* also gave recognition to this distinction, stating: " Even
Mr. Justice Frankfurter, joined in dissent in *Rabinowitz* by
Mr. Justice Jackson, admitted that there was an exception to
the search-warrant requirement in cases of necessity, and noted
that this applied, for example, to vehicles which could readily
be moved. 339 U. S. 56, at 73." (Justice WHITE, p. 773, n. 3,
Justice BLACK joining in the dissent.)

Further, the *Chimel* case was decided on June 23, 1969, is
" fully prospective " and its newly defined constitutional limits
may not be given retroactive effect to encompass the instant
conviction entered June 10, 1968. (*United States* v. *Wild,* 417
F. 2d 89; *United States* v. *Bennett,* 415 F. 2d 1113.)

Relating all this to the situation under review, at the time
of his arrest, at the police station, the defendant was a known
criminal, for whom there was a warrant. The proposition that
contemporaneously with the arrest of a wanted criminal, at
a police station, the police cannot search him or his car, is
contrary to sound reason.

Finding no merit to the other grounds urged as a basis for
reversal, we would affirm.

CAPOZZOLI, J. P. (dissenting). While it is true that the
Supreme Court has indicated that it is only unreasonable
searches that are prohibited by the Fourth Amendment, it has
nevertheless emphasized that there are few exceptions to the
requirement of a warrant. (*Amador-Gonzalez* v. *United States,*
391 F. 2d 308.)

There is a well-recognized exception that, as an incident to
arrest, the arresting officers may search the person arrested and
his immediate surroundings, without a search warrant. In
this connection the language used in *Amador-Gonzalez* v. *United
States* (*supra,* p. 314) of the opinion is particularly helpful.
" A search incident to an arrest must have as one or more of

its purposes the discovery of (1) the fruits of the crime; (2) instrumentalities used to commit the crime; (3) weapons or like material which put the arresting officer in danger or might facilitate escape; (4) contraband, the possession of which is a crime [citing cases] and * * * (5) material which constitutes evidence of the crime or evidence that the person arrested has committed it [citing cases] ''.

Again (p. 316) the court said: '' An ' incidental ' search is the exception to the command of the Constitution that all searches be with search warrants. The incidental search must be truly incidental to a primary purpose to arrest. * * * ''.

In view of the fact that the arrest was made on the basis of an old warrant, it cannot be said that the purpose of the search was to discover any of the articles mentioned in (1), (2), (4) or (5), *supra*. It is conceded that the officers had no search warrant and that the gun was concealed under the seat and not exposed to view. Therefore, if the search can be supported on any ground, it must be as an incident to a lawful arrest, for the purpose of protecting the officer, under (3), *supra*.

In the case of *Preston* v. *United States* (376 U. S. 364) three men in a parked car were arrested for vagrancy, searched for weapons and then taken to police headquarters. The car, which had not been searched when the arrest was made, was driven by an officer to a police station, from which it was towed to a garage. Soon after the men had been booked, the police officers went to the garage, searched the car and found two loaded revolvers in the glove compartment. They were unable to open the trunk and returned to the station. One of the officers went back to try to open the trunk. He did so and found caps, women's stockings (one with mouth and eye-holes), ropes, pillow slips, an illegally manufactured license plate, equipped to be snapped over another plate and other items. Thereupon one of the three men confessed that he and two others had intended to rob a federally insured bank 51 miles away from where the arrest was made. In considering the question of whether the search of the car was a reasonable one, within the exception of the constitutional amendment, the court (pp. 366–367) said the following:

'' Common sense dictates, of course, that questions involving searches of motor cars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motor car, * * * But even in the case of motor cars,

the test still is, was the search unreasonable. Therefore, we must inquire whether the facts of this case are such as to fall within any of the exceptions to the constitutional rule that a search warrant must be had before a search may be made.

"It is argued that the search and seizure was justified as incidental to a lawful arrest. Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. * * * The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime — things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then *a search made at another place, without a warrant,* is simply not incident to the arrest." (Emphasis supplied.)

Turning to the facts in the case at bar, it is clearly established that there was no search of the defendant or of the automobile when the officer directed the defendant to go with him into the station house and up to the second floor. Nor was there any search made while the officer was attempting to ascertain whether the old warrant was still outstanding. The minutes of the hearing, held in connection with the motion of the defendant to suppress, disclose the following testimony by the police officer:

"Q. When you found out that the defendant had a warrant in force you then proceeded to place him under arrest formally; is that correct? A. That's correct, yes.

"Q. Where did this take place? A. In the 30th Precinct Squad room.

"Q. Where is the Squad room located in the 30th Precinct? A. On the second floor.

"Q. And then you went down and searched the car is that correct? A. Not immediately. After he was advised of his rights then we went down with the sergeant.

"The Court: How much time elapsed between - - -

"The Witness: Approximately ten minutes, your Honor.

"Q. Now, of course the car wasn't on the second floor, was it? "A. No, sir, the car was parked in front of the station house."

In view of the fact that the arrest was made upstairs in

the police station and the search of the automobile was made in the street some time later, the search was improper. The defendant was under arrest and in actual custody and there was no more legal reason to search the car, without a search warrant, than there would have been to go to the defendant's residence and search that place. There simply is no rational connection between the arrest under the old warrant and the subsequent search of the car.

As late as June 23, 1969, in the case of *Chimel* v. *California* (395 U. S. 752, 762–763) the United States Supreme Court said:

" When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area ' within his immediate control ' — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

" There is no comparable justification, however, for routinely searching rooms other than that in which an arrest occurs — or, for that matter, for searching through all\the desk drawers or other clothes or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The ' adherence to judicial processes ' mandated by the Fourth Amendment requires no less.

" This is the principle that underlay our decision in *Preston* v. *United States*, 376 U. S. 364."

The majority places great reliance on *People ex rel. Muhammad* v. *Mancusi* (301 F. Supp. 1100). In that case the relator contended that 44 Travelers Express Company money orders, found in his brief case at the time of his questioning at FBI headquarters, should not have been used as evidence against him at his trial in the State court because the search of the brief

case was unconstitutional. The relator had been arrested at a bank, where he had attempted to cash one of the money orders. He was arrested at the bank by an FBI agent and his person searched. The agent took the brief case from the relator and brought him to headquarters. At headquarters the brief case was searched and the money orders found. The court upheld the search and distinguished the case from *Preston* v. *United States* (376 U. S. 364, *supra*). There is no disagreement with the ruling of the court because, under the facts of the case, the brief case could have been searched at the bank when the arrest was made. The case at bar is quite different. When the arresting officer directed the defendant to go to the station house there was no arrest at that time and a search of the automobile would clearly have been illegal. The arrest was not made until sometime later, in the police station, after the officer verified the existence of the unexecuted warrant, and, therefore, the reasoning of the *Muhammad* case does not apply.

Frankly, I must confess that a reading of the trial minutes in the case at bar discloses ample factual evidence to justify the verdict of guilty against the defendant. One cannot help but experience a feeling of frustration to see good police work come to naught. However, the case presents a constitutional question affecting the rights of the defendant and it can only be decided by applying the fundamental law of the land as settled by higher authority. Therefore, sympathetic as I may be to the view expressed in the majority opinion, under the authorities, I have no choice but to agree with the candid position taken by the District Attorney in his brief submitted to this court, at page 14 thereof, to wit: "In sum, under the particular circumstances of this case, there being no rational connection between the arrest under an old warrant and the search of the car, and absent any effective control over the car by the defendant to justify a search for weapons, it was unreasonable for the police officer to search the vehicle and consequently, the gun should have been suppressed."

For the reasons above given, I dissent and vote to reverse the judgment of conviction.

STEUER and BASTOW, JJ., concur with McGIVERN, J.; CAPOZZOLI, J. P., dissents in opinion.

Judgment affirmed.