**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mathew James BREEDLOVE et al.,
Defendants-Appellants.**

**No. 29542.**

United States Court of Appeals,
Fifth Circuit.

June 18, 1971.

Rehearing Denied July 30, 1971.

Buddy Stevens, Houston, Tex., for Breedlove, Reed and Lundy.

Seagal V. Wheatley U. S. Atty., Jeremiah Handy, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before COLEMAN, INGRAHAM and WILKEY,* Circuit Judges.

INGRAHAM, Circuit Judge:

Defendants Breedlove, Reed and Lundy, having waived their right to trial by jury, were tried by the court and convicted of robbing the Citizens National Bank of Austin, Texas, in violation of Title 18 U.S.C. § 2113(a), (b), (d).

The three named defendants now appeal from the judgments of conviction asserting that their arrest was illegal for lack of probable cause and the trial court's admission into evidence, over objection, of accomplice witness testimony allegedly tainted by that illegal arrest, constituted reversible error.

The facts giving rise to the arrest of the defendants may be briefly summarized.

---

* Of the District of Columbia Circuit, sitting by designation.

The three defendants, accompanied by two female companions, Constance Patterson and Beverly Parker, drove from Houston, Texas, to San Antonio, and after an overnight sojourn arrived in Austin on the morning of November 12, 1970. Upon their arrival, the quintet stopped at the Capital Plaza Shopping Center, wherein the Citizens National Bank is located. Having assured themselves that the bank "looked all right" through the reconnoitering efforts of Constance Patterson, the group proceeded to an apartment complex in close proximity to the bank. They there located a late model red Pontiac automobile, which the evidence indicates was used by the defendants as transportation to and from the immediate scene of the robbery.

Three witnesses to the Citizens National Bank robbery testified that the bank was held up at gunpoint by three Negro males wearing multi-colored ski masks and dark colored one-piece jumpsuits. It was further revealed that the trio departed the bank with the holdup money contained in a corrugated cardboard box.

An off-duty policeman testified that he observed defendants Reed and Lundy together with a light colored Negro female (Constance Patterson) standing near a dark colored Pontiac which was parked immediately in front of a late model red Pontiac, and that defendant Lundy appeared to be preparing to enter the former.

Constance Patterson and Beverly Parker, having previously pleaded guilty to aiding and abetting their male companions in the commission of the offense, were called by and testified for the prosecution. Their testimony revealed that the three defendants, dressed in dark colored one-piece jumpsuits, left the apartment complex in the red Pontiac and returned a few minutes later. Upon their return, they were observed to be in possession of multi-colored ski masks, pistols and a corrugated cardboard box containing money. At this point, the defendants left the red Pontiac and transferred to the dark colored Pontiac (Lundy's car) with Reed and Lundy riding with the two females and defendant Breedlove riding in the trunk. Thereafter, they drove from the city of Austin in a northerly direction on Interstate Highway T–35.

While on patrol, Texas Department of Public Safety Officer David Hicks received a police radio broadcast at 1:36 P.M., informing him of the Citizens National Bank robbery. The broadcast described the "get away" car as a red Pontiac and the robbery suspects, attired in coveralls and ski masks, as three Negro males accompanied by two females, one possibly white. Within minutes of the first broadcast, Officer Hicks received a second radio message from the police dispatcher advising him that the suspects had changed cars and were now in a dark colored Pontiac.[1] Having received the above information, Officer Hicks set up a checkpoint approximately 18 miles north of Austin on Interstate 35 and began observance of the northbound traffic. Approximately 100 vehicles passed the checkpoint before Officer Hicks observed the automobile occupied by the appellants. Officer Hicks testified that:

"[T]he driver and the female were sitting deep to the left under the wheel, as if they were necking, and the two in the rear were the same way, other than I could see the light-colored subject in the back, as I wasn't forty feet from them * * *."

To further verify the description of the automobile, Officer Hicks radioed Austin and inquired if it was possible that the automobile in question was dark

---

1. Officer Hicks was called as a witness by the defense in support of its motions to suppress. On direct examination, the officer testified that he believed the word

"Pontiac" was used to describe the dark colored automobile, as well as the first mentioned red automobile.

green—such inquiry eliciting an affirmative response. The officer then pursued, stopped and arrested the occupants of the vehicle. The revolvers, clothing and money obtained in the ensuing search were not introduced in evidence at appellants' trial.

An arrest without a warrant is not constitutionally infirm if at the moment the arrest was made the arresting officer had probable cause to make it. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1948). "Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280 [69 L.Ed. 543]." Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1958). Of particular moment in the instant case is the commission of an armed robbery followed by flight to avoid police detection. The exigencies of the situation made Officer Hicks' course of action imperative. See McDonald v. United States, 335 U.S. 451, 457, 69 S.Ct. 191, 93 L.Ed. 153 (1948). Moreover, the emergency nature of the arrest militates rather heavily, we think, in determining its reasonableness.

■■ Appellants do not question the controlling principles of law, but rather contend that the description of the automobile and the information possessed by Officer Hicks at the time of the arrest was not sufficient to constitute probable cause. We are compelled, under the circumstances presented, to reject that contention. Officer Hicks had an accurate, albeit general, description of the automobile and its occupants. The arrival of the appellants' automobile at the checkpoint was at a time and distance from the robbery consistent with its being the get away car. Moreover, there is no suggestion that Officer Hicks attempted or contemplated a random stopping of innocent highway travelers. He knew what he was looking for, and he found it. That appellants' automobile was the only one stopped of the more than 100 that passed through the checkpoint attests to this fact. There was no arbitrary or capricious action on the part of the arresting officer predicated on mere suspicion. Quite to the contrary, there was exhibited effective and vigilant police work. Under these circumstances, we do not hesitate to hold that probable cause for the arrest existed. We likewise reject appellants' arguments that the testimonial evidence of the two female accomplice witnesses was the fruit of an unlawful search incident to an illegal arrest. Even assuming, arguendo, the lack of probable cause for the arrest, appellants have no standing to challenge the invasion of another's rights. As the Supreme Court has noted:

"The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing."

Alderman v. United States, 394 U.S. 165, 171, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969). Fourth Amendment rights are personal rights which may not be vicariously asserted. *Alderman, supra,* at 174.

The judgment of conviction is affirmed.