# United States Court of Appeals
## For the First Circuit

No. 12-1722

ROBERT F. ROBINSON ET AL.,

Plaintiffs, Appellants,

v.

TIMOTHY J. COOK, SR. ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Judith G. Dein, U.S. Magistrate Judge]

Before

Thompson, Stahl, and Lipez,
Circuit Judges.

Brendan C. Selby, with whom Valeriano Diviacchi was on brief, for appellants.
Joseph A. Padolsky, with whom Douglas I. Louison and Louison, Costello, Condon & Pfaff LLP were on brief, for appellees.

January 23, 2013

**STAHL**, **Circuit Judge**.  This appeal stems from a police investigation of a 2007 hit-and-run that culminated in the arrests of father and son Robert and Mario Robinson and the seizure of Robert's car.  After the resulting criminal charges against the Robinsons were dismissed, they filed state and federal claims against the City of Attleboro, Massachusetts and several Attleboro police officers.  The district court granted summary judgment for the defendants, and the Robinsons now appeal.  After careful consideration, we affirm.

## I.  Facts & Background

On July 12, 2007, two thirteen-year-old boys, Christopher Redlund and Nathan Chou, were riding their bicycles along Wilmarth Street in Attleboro when a car pulled up alongside them.  The car's passenger (unknown to the boys) engaged Redlund in a verbal exchange, which may have involved shouting and swearing, an inquiry about whether the boys were involved in a recent incident in which a classmate had been beaten up, or both.  (Redlund's descriptions of this altercation have varied somewhat.)  After Redlund told the passenger to leave him and Chou alone, the car drove at Redlund and struck him, flipping him over his handlebars and onto the road, scraping his back, arms, and legs.  The car then drove away.

Redlund called his father, Attleboro Detective Alex Aponte (who is not a defendant here), to report the incident.  Aponte and two other police officers arrived at the scene.  The

boys described the car, which Redlund believed he had seen in the area before, as a silver or tan two-door compact in poor shape with a rubber strip hanging from the passenger side. Redlund suggested that the car might be Japanese in origin, and Chou apparently mentioned that it could be a Nissan, although he later said that he thought it was a Honda. The boys said that the car's occupants were three or four dark-skinned young men.

The officers soon located a 1989 Honda Accord coupe that apparently matched the boys' description in the Robinsons' driveway, about a mile from the hit-and-run location. The exterior of the car was in poor condition, and a strip of rubber molding was hanging from the side. The passenger door was ajar, and the seatbelt was hanging out the door opening. The engine was warm.

When Robert emerged from the house, the officers told him they were investigating a hit-and-run and inquired as to the whereabouts of Robert's nineteen-year-old son Mario (whom they knew from his previous encounters with police). Robert explained that Mario was getting a haircut. The parties dispute what Robert told the officers about the car: Robert claims that he told the officers that the car had been sitting in the driveway for ten or twenty minutes, whereas the officers claim that Robert initially denied that anyone had used the car for months, and then said that he and Mario had used the car to drive home from work earlier. The officers then asked Robert for the car keys, which he provided, and

had the car towed to the police station. They asked Robert to come to the station with Mario for interviews.

Redlund and Chou were also summoned to the police station, where Redlund provided a written statement about the incident and described it to Attleboro Detective Timothy Cook, Sr. Aponte took Redlund and Chou (separately) to see a row of cars in the station parking lot, and asked each boy if he could identify the car that had struck Redlund. Both boys identified Robert's Honda. Chou was then shown a picture of Robert, but could not identify him.

When the Robinsons arrived at the station (whether this was before or after the boys arrived is unclear), they agreed to be interviewed. Mario was taken to an interrogation room, read his Miranda rights, and interviewed by Detective Cook. Redlund watched on closed-circuit video with his father and other officers. Redlund was initially unable to identify Mario, but recognized him as the car's passenger once he removed the hat he was wearing. Mario denied that he or his father had been involved in the hit-and-run, and said that his father had been the only person to drive the car that day. Detective Cook nevertheless arrested him for assault and battery with a dangerous weapon.

Robert was then taken to the interrogation room and read his Miranda rights. Redlund, watching on the monitor, could not identify Robert. Like Mario, Robert denied that he or Mario had

-4-

been involved and said that only he had driven the car that day (to and from work in Boston). Detective Cook arrested Robert for leaving the scene of an accident, negligent operation of a motor vehicle, and assault and battery with a dangerous weapon.

What happened next is sharply disputed. The Robinsons contend that Detective Cook and Patrolman Timothy Cook, Jr. (Detective Cook's son) assaulted Mario during the booking process, whereas the defendants contend that Mario refused to obey their orders and made as if to strike Detective Cook. The details of this altercation are not relevant to this appeal; by either account, Mario was not injured during the struggle. Prosecutors later added charges against Mario stemming from this incident, but all of the charges against both Mario and Robert were eventually dismissed by the state trial court.

The Robinsons subsequently filed suit against the City of Attleboro, Detective Cook, Patrolman Cook, and six other police officers who were present for or involved in various phases of the investigation, arrest, and detention.[1] They raised state and federal constitutional claims under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act (MCRA), Mass. Gen. Laws ch. 12, § 11I, based on allegations of unlawful arrest, the use of excessive force, and the unreasonable seizure of the car. They

---

[1] The other named defendants were Danish Malhotra, Kevin Fuoco, James MacDonald, Barry Brewer, Jeffrey Pierce, and Richard Woodhead.

also asserted state law claims for false imprisonment, assault and battery, intentional infliction of emotional distress, aiding and abetting, and civil conspiracy.

After discovery, the district court granted summary judgment to the defendants on most of the Robinsons' claims. Robinson v. Cook, 863 F. Supp. 2d 49 (D. Mass. 2012). The district court found that the arrests were supported by probable cause (and thus that the claim for false imprisonment must fail), id. at 64-69, 72, and that the warrantless seizure of the car was lawful, id. at 69-70. The court also found no evidence that could establish municipal liability, id. at 70-72, or support a claim for intentional infliction of emotional distress, id. at 73-74. The court did, however, find that the disputed facts regarding the scuffle in the police station between Mario and the Cooks precluded summary judgment on the claims of excessive force, assault and battery, aiding and abetting, and civil conspiracy. See id. at 62-64, 74. And the court further concluded that qualified immunity could not shield the defendants from liability on the excessive force claim because "the unwarranted use of excessive force against an individual who was posing no threat and making no attempt to evade or resist arrest" would be clearly unlawful to a reasonable police officer. Id. at 64.

In a subsequent order clarifying its decision, the district court also granted summary judgment for three of the

-6-

police officer defendants (Malhotra, MacDonald, and Fuoco) as to the civil conspiracy and aiding and abetting claims, leaving those claims alive only as to Detective Cook and Patrolman Cook. The parties then agreed that the court should enter judgment dismissing the remaining claims, with the Robinsons' right to appeal that dismissal waived, but "with the understanding that the Plaintiffs are preserving all rights of appeal from the summary judgment."

As framed by the parties, the net result of this procedural muddle is that four issues remain: whether the seizure of the car was constitutional; whether the arrests were constitutional; whether these actions can give rise to municipal liability under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978); and whether there is evidence to support a claim of intentional infliction of emotional distress.[2]

## II. Analysis

We review a grant of summary judgment de novo, Manganella v. Evanston Ins. Co., 700 F.3d 585, 590 (1st Cir. 2012), and will affirm if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, see Fed. R. Civ. P. 56(a). We consider cross-motions for summary judgment separately, drawing all reasonable inferences in the nonmovant's

---

[2] Although the defendants argued below that they are entitled to qualified immunity on the § 1983 and MCRA claims, see 863 F. Supp. 2d at 61, they have not renewed that argument here.

-7-

favor.  OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Can., 684 F.3d 237, 241 (1st Cir. 2012).

## A.  The Seizure of Robert's Car

We begin with the Robinsons' contention that the defendants' seizure of Robert's Honda, from his own driveway and without a warrant, violated the Fourth Amendment's prohibition of unreasonable searches and seizures, U.S. Const., amend IV, and the Massachusetts Constitution's parallel guarantee, Mass. Const., pt. 1, art. XIV.[3]  This argument calls for us to apply the automobile exception to the Fourth Amendment's warrant requirement, under which police may conduct a warrantless search or seizure of a car if they have probable cause to do so.  See Maryland v. Dyson, 527 U.S. 465, 466–67 (1999) (per curiam); Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per curiam).

The Robinsons argue that the police lacked probable cause to seize the car.  They also contend that an additional requirement applies here: because Robert's car was parked not on a public road, where probable cause alone would suffice, United States v. McCoy, 977 F.2d 706, 710 (1st Cir. 1992), but rather in his own driveway,

---

[3]  We analyze these claims together because we have found no support for the Robinsons' suggestion that Article XIV would be more protective than the Fourth Amendment on these facts.  See Massachusetts v. Eggleston, 903 N.E.2d 1087, 1090 (Mass. 2009) ("[W]hile art. 14 at times provides more protection than the Fourth Amendment, we ha[ve] followed the Supreme Court in the area of the automobile exception on other occasions, and no compelling reason ha[s] been advanced to cause art. 14 and the Fourth Amendment to diverge in this area.").

the Robinsons say that the police also needed exigent circumstances to justify the seizure. The district court said the same thing, 863 F. Supp. 2d at 69 (citing United States v. Swanson, 341 F.3d 524, 531 (6th Cir. 2003)), and the defendants neither disputed the point below nor do so now. Given that the Supreme Court has repeatedly emphasized that "the automobile exception does not have a separate exigency requirement," Dyson, 527 U.S. at 467; see Labron, 518 U.S. at 940, we are less certain.[4] Nevertheless, because the issue is neither disputed nor dispositive here, we will assume for the sake of argument that both probable cause and exigent circumstances were necessary.

Probable cause exists where the facts and circumstances as to which the police have reasonably trustworthy information are

---

[4] Without venturing too far into this thicket, we note that the parties' understanding may stem from cases that predate the Supreme Court's clarification that the automobile exception has no exigency element. See United States v. Panitz, 907 F.2d 1267, 1271 (1st Cir. 1990) (noting that "exigent circumstances may at one time . . . have . . . been required to ground a vehicle search"); Eggleston, 903 N.E.2d at 1090 (stating that the U.S. Supreme Court has "eliminated any requirement that exigent circumstances exist," and that the Supreme Judicial Court has followed suit); 3 Wayne R. LaFave, Search & Seizure § 7.2(b), at 557 & n.79 (4th ed. 2004) (collecting cases finding that exigency is now "irrelevant" to the automobile exception). Most circuits that have recently considered the propriety of warrantless vehicle searches or seizures on private property have found probable cause alone to be sufficient. E.g., United States v. Blaylock, 535 F.3d 922, 926 (8th Cir. 2008); United States v. Hines, 449 F.3d 808, 814 (7th Cir. 2006); United States v. Brookins, 345 F.3d 231, 237–38 & 237 n.8 (4th Cir. 2003); United States v. Fladten, 230 F.3d 1083, 1085–86 (8th Cir. 2000). But see United States v. Fields, 456 F.3d 519, 524–25 (5th Cir. 2006).

sufficient to warrant a person of reasonable caution in the belief that evidence of a crime will be found.  Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 370 (2009); see also United States v. Grubbs, 547 U.S. 90, 95 (2006) (probable cause is present when there is a fair probability that contraband or evidence of a crime will be found).  The Robinsons argue that this standard was not met here because the boys' description of the car that hit Redlund was too "commonplace" to create a sufficient likelihood that Robert's Honda was that car.  We disagree.

Redlund and Chou described the car that hit Redlund as a silver or tan two-door Japanese compact in poor shape with a rubber strip hanging from the side.  This description, which closely matches Robert's Honda, is fairly precise, especially insofar as it encompasses the car's condition and includes a peculiar physical feature (the rubber strip).  Further, the car was found within a mile of the hit-and-run site, which, together with Redlund's memory of having seen the car in the area before, bolstered the officers' conclusion that it was the car they were looking for.  And the warmth of the engine showed that the Honda had been driven recently, further distinguishing it from similar cars parked in the vicinity.  The totality of these circumstances was sufficient to create a fair probability that Robert's Honda contained (or was) evidence related to the hit-and-run.  See Chambers v. Maroney, 399 U.S. 42, 44, 46-47 (1970) (finding probable cause for stop and

-10-

arrest where witnesses described a "light blue compact station wagon," which was spotted two miles from crime scene, less than an hour after the crime occurred); Capraro v. Bunt, 44 F.3d 690, 691 (8th Cir. 1995) (finding probable cause to seize a truck from the owner's driveway because it matched a kidnapping victim's description of the vehicle used in the kidnapping); United States v. Breedlove, 444 F.2d 422, 424 (5th Cir. 1971) (an "accurate, albeit general, description" of a car and its occupants created probable cause, where the car was spotted "at a time and distance from the [crime scene] consistent with its being the get away car"). Thus, the police had probable cause to seize the car.[5]

Exigent circumstances -- if actually necessary -- were also present. As the district court noted, neither Robert nor Mario was under arrest when the officers left their house; thus, they would have "had an opportunity to abscond with the vehicle" if it had not been towed. 863 F. Supp. 2d at 70; see also Swanson, 341 F.3d at 533 (exigent circumstances justified seizure of a car where, because officers did not arrest the owner, he "would have been free to drive the car away, and perhaps destroy or dispose of evidence, or even the car itself"); 3 Wayne R. LaFave, Search & Seizure § 7.2(b), at 559-60 & nn.88-92 (4th ed. 2004) (collecting

---

[5] Because these facts created probable cause, we do not address the Robinsons' argument that the district court's probable cause determination erroneously relied on the officers' disputed account of their first interaction with Robert (in which he supposedly denied having driven the car and then recanted).

cases emphasizing the ability of defendants or third parties to move or tamper with cars not yet searched or seized). The Robinsons protest that upholding the seizure on this basis would allow the police to "create exigent circumstances by failing to arrest someone[, thereby] creating the risk that evidence will be destroyed." But even if the officers had probable cause to arrest Robert at this point (which the Robinsons do not accept), and had actually done so, Mario would have remained at large; he was not at home when the police were there, and could have returned to move or meddle with the car.[6] Thus, assuming that exigent circumstances were required here, see supra note 4, they were present. Consequently, the seizure did not offend either the Fourth Amendment or Article XIV.

## B. The Arrests

We turn next to the Robinsons' arrests. A warrantless arrest is permissible under the Fourth Amendment where there is probable cause, i.e., where reasonably trustworthy facts and

---

[6]     Also unpersuasive is the Robinsons' suggestion that there was no exigency because the police could have "guarded" the car until a warrant was obtained; "that is no less of an intrusion than the seizure . . . of the car." Swanson, 341 F.3d at 533 (citing Chambers, 399 U.S. at 51-52); see LaFave, supra, § 7.2(b), at 559-60 (courts have generally not required law enforcement to mitigate the risk of lost evidence by guarding a vehicle while obtaining a warrant); cf. Massachusetts v. Bakoian, 588 N.E.2d 667, 672 (Mass. 1992) (explaining, before the elimination of the exigency requirement in Massachusetts, that the feasibility of posting a police guard while a warrant was obtained did not weigh heavily against a finding of exigent circumstances).

circumstances would enable a reasonably prudent person to believe that the arrestee has committed a crime (even if it differs from the one named by police during the arrest or booking). Devenpeck v. Alford, 543 U.S. 146, 152-54 (2004); United States v. Jones, 432 F.3d 34, 41 (1st Cir. 2005). The same standard governs warrantless arrests under Article XIV. See Massachusetts v. Hernandez, 863 N.E.2d 930, 934 (Mass. 2007); Massachusetts v. Santaliz, 596 N.E.2d 337, 339 (Mass. 1992). Here, the Robinsons argue that the police lacked probable cause to arrest Robert or Mario for any crime.

### 1. Mario's Arrest

Detective Cook arrested Mario for assault and battery by means of a dangerous weapon under Mass. Gen. Laws ch. 265, § 15A(b). That offense requires an intentional and unjustified use of force upon the person of another with a dangerous weapon (which can include a car). See Massachusetts v. Appleby, 402 N.E.2d 1051, 1057, 1058 (Mass. 1980). No specific intent to injure is required; the intent element is satisfied if the defendant had a "general intent to do the act causing injury." Id. at 1059. The Robinsons challenge Mario's arrest on three grounds.

#### a. The boys' identification of the Honda

The Robinsons first contend that the process by which Redlund and Chou identified the Honda at the police station was so suggestive that it could not contribute to a finding of probable cause. Both parties frame their arguments on this issue (and on

the reliability of Redlund's identification of Mario, discussed below) using the standard developed by the Supreme Court to govern the admissibility of witness identifications at criminal trials. See Perry v. New Hampshire, 132 S. Ct. 716, 724-25 (2012) (describing the line of cases leading from Stovall v. Denno, 388 U.S. 293 (1967), to Manson v. Brathwaite, 432 U.S. 98 (1977)). Under this two-part test, courts first ask whether the police have "use[d] an identification procedure that is both suggestive and unnecessary." Id. at 724. If so, and if the totality of the circumstances (considered in light of various factors) reveals a substantial likelihood of misidentification, the identification will be excluded. Id. at 724-25; see United States v. García-Álvarez, 541 F.3d 8, 13 (1st Cir. 2008).

Without questioning its application in the criminal context, we think it unwise to expand the Brathwaite framework from "a rule of evidence to a rule of damages" by applying it in an arrestee's civil suit alleging that probable cause was undermined by an unreliable identification. See Phillips v. Allen, 668 F.3d 912, 915 (7th Cir. 2012) (declining to apply Brathwaite in a § 1983 case alleging unlawful arrest); see Good v. Curtis, 601 F.3d 393, 398 (5th Cir. 2010) (similar); Mundy v. Georgia, 586 F.2d 507, 508 (5th Cir. 1978) (similar); cf. Abreu-Guzman v. Ford, 241 F.3d 69, 74 (1st Cir. 2001) (discussing whether photographic identification supported probable cause, for purposes of arrestee's Bivens claim,

-14-

without reference to the <u>Brathwaite</u> framework); <u>Lallemand</u> v. <u>Univ. of R.I.</u>, 9 F.3d 214, 216 (1st Cir. 1993) (similar, in § 1983 case).[7] Rather, we think the best course is to continue to weigh probable cause in these civil cases by asking whether a given piece of information -- including an allegedly unreliable identification -- is trustworthy enough that a reasonably prudent person would rely on it in forming a belief about the suspect's conduct. <u>Jones</u>, 432 F.3d at 41; <u>see</u> <u>Roche</u> v. <u>John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 255 (1st Cir. 1996) ("[F]or the purpose of determining probable cause, courts must ask whether a reasonable person would rely on a particular piece of information, not whether that information was unquestionably accurate."). Of course, when courts apply that standard to a particular eyewitness identification that a plaintiff alleges is unreliable (whether as a result of suggestive police procedures or otherwise), the factors identified in the <u>Stovall</u>-<u>Brathwaite</u> cases will be "relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations." <u>Illinois</u> v. <u>Gates</u>, 462 U.S. 213, 233 (1983).[8]

---

[7] Some courts have used the <u>Brathwaite</u> rubric in civil cases like this one, <u>e.g.</u>, <u>Grant</u> v. <u>City of Long Beach</u>, 315 F.3d 1081, 1086 (9th Cir. 2002); <u>Brodnicki</u> v. <u>City of Omaha</u>, 75 F.3d 1261, 1265 (8th Cir. 1996), albeit without expressly considering its appropriateness in this context. The parties relied on these cases in framing their arguments.

[8] The basic test for probable cause under the Massachusetts Constitution is the same as under the Fourth Amendment, <u>see</u>

-15-

Applying this test to the facts at hand, we find that a reasonable person would rely on the boys' identification of Robert's Honda. Redlund testified at his deposition that his father, Detective Aponte, took him into the police station's parking lot, where there was a row of cars, and asked him to point out the car that had hit him. Redlund recognized the car, noting specifically the dangling rubber trim piece and a red warning sticker he had noticed on the center console during the incident. Similarly, Chou testified that the officers took him to the parking lot to identify the car; he recognized the color, noted the hanging weather strip, and saw that the car was a Honda.[9]

The Robinsons' challenge to this process is essentially that, as impressionable youths, the boys would have been so inclined to believe that the police (including Redlund's father) had identified the correct car and driver that their identification of the car was valueless. But the Robinsons offer no support for the proposition that an identification is unreliable simply because an eyewitness is young or inclined to trust the police. Indeed, as

Hernandez, 863 N.E.2d at 934; Santaliz, 596 N.E.2d at 339, and we have found no indication that the Massachusetts courts would apply their (stricter) analogue to the Brathwaite rule, see Massachusetts v. Johnson, 650 N.E.2d 1257, 1260 (Mass. 1995), in this context.

[9] Neither boy's testimony is pellucid as to when exactly he identified the car, but the parties appear to agree that the identifications took place before the arrests, and Detective Cook cited the boys' identification of the car as a partial basis for his decision to arrest Robert and Mario.

-16-

the district court observed, 863 F. Supp. 2d at 65-66, the fact that Redlund and Chou declined to identify Robert himself in more suggestive circumstances cuts sharply against the Robinsons' argument that the boys were simply overawed by the police officers. Further, the Honda was apparently situated in a "row of cars"; the record does not reflect how similar the other cars were to the Honda, but there is no indication that the officers directed the boys to the Honda. Rather, Redlund recounted that Aponte asked him "can you tell me which car hit you?" and that Redlund then "found" the Honda. And, of course, the Honda closely matched the boys' prior description of the car that hit Redlund. On this record, the boys' identification of the car was reliable enough to help establish probable cause. See Roche, 81 F.3d at 255.

### b. Redlund's identification of Mario

The Robinsons next challenge Redlund's identification of Mario himself, on much the same grounds.[10] They also point out that "show up" identifications like this one are generally disfavored. See Stovall, 388 U.S. at 302 (describing the use of single-suspect identifications instead of line-ups as "widely condemned"). We take no issue with that point. Nevertheless, we conclude that this identification was sufficiently reliable to contribute to a finding of probable cause.

---

[10] Contrary to the Robinsons' assertion, Chou was never asked to, and did not, identify Mario.

-17-

Redlund was asked to identify Mario via closed-circuit television during Mario's interview with Detective Cook. Redlund was initially unable to identify Mario, but recognized him once he removed his hat, revealing a distinctive hairstyle. The fact that Redlund could not identify Mario until he removed his hat (and that neither boy could identify Robert at all) belies the Robinsons' assertion that the boys were blindly following the assurances of trusted authority figures. Further, this identification took place mere hours after the hit-and-run, and there is no suggestion that Redlund did not get a decent look at the passenger during the incident. Cf. García-Álvarez, 541 F.3d at 14 (discussing factors probative of identification reliability). Finally, as the district court found, Redlund's identification of Mario was consistent with other show-ups that have been held to support a finding of probable cause, right down to the young age of the witness. See Brodnicki v. City of Omaha, 75 F.3d 1261, 1265-66 (8th Cir. 1996) (applying the Brathwaite framework to find it reasonable for police officers to rely on a show-up to support probable cause, where the nine-year-old witness provided a detailed description of the suspect and his car and was confident in her identification of the suspect, which took place on the same day as the alleged crime).

### c. Evidence of culpability

The Robinsons' final challenge to Mario's arrest takes a different tack. They contend that, even if Mario was the passenger

-18-

in the car that hit Redlund, there is no evidence that he actually did anything other than shout and swear at the boys; thus, he cannot have had the requisite "general intent to do the act causing injury." Appleby, 402 N.E.2d at 1059. The district court agreed in part, seeing no probable cause to believe that Mario had committed the assault-and-battery offense himself, but finding probable cause to arrest him for aiding and abetting or conspiring to commit that offense, because there was evidence -- the shouting and swearing[11] -- that Mario's "role in the alleged incident was not merely that of a passive observer." 863 F. Supp. 2d at 67-68; see also Massachusetts v. Zanetti, 910 N.E.2d 869, 884 (Mass. 2009) (a defendant is guilty of aiding and abetting if he "knowingly participated in the commission of the crime charged . . . with the intent required for that offense").[12]

---

[11] Although Redlund's descriptions of the incident have varied somewhat, it is undisputed that the information known to the police at the time of the arrests indicated that the passenger of the car had shouted, cursed, and acted belligerently toward Redlund and Chou immediately before the car hit Redlund.

[12] On appeal, the defendants adopt the district court's conspiracy and aiding-and-abetting conclusions. They also contend that probable cause supported Mario's arrest under a joint-venture theory, but it is not clear that this theory is distinct from the aiding-and-abetting rubric under which the district court found probable cause. See Marshall v. Massachusetts, 463 Mass. 529, 536 n.12 (2012) (explaining that the aiding-and-abetting statute "had long been viewed as a unified theory of joint venture liability"); Zanetti, 910 N.E.2d at 884 (adopting aiding-and-abetting language in place of joint-venture language for future prosecutions).

Whether probable cause justified Mario's arrest is a close question. Mere proximity to a criminal act does not establish probable cause; the police must show some additional circumstances from which it is reasonable to infer participation in criminal activity. United States v. Martínez-Molina, 64 F.3d 719, 726 (1st Cir. 1995). And, as the Robinsons point out, another circuit has declined to find probable cause as a matter of law on similar facts. In Torres v. City of Los Angeles, 548 F.3d 1197 (9th Cir. 2008), a § 1983 case, the police had arrested the plaintiff and charged him with murder and attempted murder, based on evidence that, while riding in a car, he "had flashed gang signs and shouted challenges" shortly before another passenger shot two people (one fatally). Id. at 1209. The Ninth Circuit reversed a judgment as a matter of law for the defendants, explaining that a reasonable juror could find that the police lacked probable cause to arrest the plaintiff because their evidence of the passenger's conduct did not establish that he "had acted in concert with" the shooter and with the requisite mental state. Id.

The Robinsons argue that the same reasoning applies here, but we think Torres is distinguishable. The Ninth Circuit's conclusion that the police lacked evidence of culpable conduct by the passenger was only part of its probable cause holding, which also turned on the fact that the police lacked sufficient evidence to believe that Torres actually was the passenger in the first

-20-

place.  See id. at 1208.  There is also a material difference in the underlying facts: in Torres, the passenger's conduct apparently precipitated a car chase that culminated in the shooting, whereas here, the hit-and-run came immediately after the passenger's confrontation with the boys.  Thus, the inference that the car's occupants were acting in concert is more plausible here than it was in Torres, where the shooter was apparently responding to the intervening event of the car chase.  See id. at 1207 n.8.

In sum, we think the district court did not err by finding probable cause here.  The facts known to the police -- in particular, the immediacy with which the hit-and-run followed the passenger's verbal abuse -- were sufficient to enable a reasonable person to conclude that the passenger intended the driver to hit Redlund.  See Appleby, 402 N.E.2d at 1059 (section 15A "requires only general intent").  Coupled with the adequately reliable identifications of the Honda and of Mario himself, this information was sufficient to create probable cause for Mario's arrest under an aiding-and-abetting theory.  As we said, the question is close, but "[t]he threshold for probable cause in a criminal case is low," Suboh v. Dist. Attorney's Office of Suffolk Dist., 298 F.3d 81, 96 (1st Cir. 2002), and the evidence here just clears that bar.

### 2.    Robert's Arrest

We reach the same conclusion as to Robert's arrest, which was also based on assault and battery, as well as negligence and

-21-

leaving the scene of an accident.  The Robinsons challenge Robert's arrest on two bases.  The first -- that the identification of the car was unreliable -- we have already rejected.  The second is that the police concluded that Robert was driving the car during the incident by selectively and unreasonably crediting only some of his statements.  We find this argument, too, unavailing.

Robert told the police, both at his house and at the station, that he had driven the car earlier in the day, but had merely driven it home from work and was not involved in the incident.  The Robinsons argue that it was contradictory for the police to credit Robert's acknowledgment that he (and no one else) had driven the car that day, but not also his statement that he had been at work and did not hit Redlund.  But a reasonable police officer need not credit a suspect's self-serving statements.  Cox v. Hainey, 391 F.3d 25, 32 n.2 (1st Cir. 2004).  And we are aware of no authority standing for the dubious proposition that if a person tells the truth about one thing, he cannot be lying about something else.  In any event, this is not a situation where the police relied solely and selectively on parts of a suspect's statement to incriminate him; Detective Cook was also aware that the boys had identified Robert's car as the one that hit Redlund, that the car had been found near the scene of the incident with a warm engine, that Redlund had identified Mario as the passenger, and that there was no other plausible candidate for the driver.

Given these facts, it was not unreasonable for Detective Cook to conclude that Robert was telling the truth about having driven the car, but not about when and where. In sum, the totality of these circumstances was sufficient to create probable cause for Robert's arrest.[13]

## C.        Remaining Issues

The foregoing analysis truncates our consideration of the remaining issues. Because the Robinsons acknowledge that their false imprisonment claims stand or fall with the unlawful arrest claims discussed above, see Santiago v. Fenton, 891 F.2d 373, 383 (1st Cir. 1989), we need not address those claims further. Similarly, policy or practice aside, a municipality cannot be liable for the actions of its officials under Monell if those actions "inflicted no constitutional harm." City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Finally, an intentional-infliction-of-emotional-distress claim requires "extreme and outrageous" behavior, Sena v. Massachusetts, 629 N.E.2d 986, 994 (Mass. 1994), and the legitimate police conduct disclosed by this

---

[13]      It is irrelevant that, as the Robinsons emphasize, Detective Cook told Robert that he thought "somebody else might've been driving that car." Even if Detective Cook genuinely believed that Robert was not driving the car (and was not simply employing an interrogation tactic), that fact would not vitiate probable cause, which is evaluated objectively. See Jones, 432 F.3d at 41.

record does not qualify, see id.; Vasquez v. Cmty. Sav. Bank, No. 931814D, 1995 WL 808709, at *2 (Mass. Super. Apr. 11, 1995).[14]

### III.  Conclusion

Precisely what transpired on Wilmarth Street on July 12, 2007 may never be established.  Certainly, if Robert and Mario's account is accurate, their dudgeon at being arrested and haled into court is understandable.  But on the facts disclosed by this record -- even when viewed in the light most favorable to the Robinsons, see Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 47 (1st Cir. 2011) -- the defendants acted lawfully.  Accordingly, we affirm.

---

[14]    We have no occasion to consider whether the ostensible assault on Mario during the booking process could be "extreme and outrageous," because the Robinsons have voluntarily dismissed (and waived any appellate rights as to) their claims regarding that incident.